UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

DEAN L HORTON and
FRANCES H. HORTON,   Case No. 19-11162-t7

Debtors.

**OPINION**

Before the Court is the motion of Robert Marcus, the liquidating trustee in a related bankruptcy case, for leave to bring a constructive trust action against this estate's most valuable asset. Marcus proposes to name the chapter 7 trustee as an *in rem* defendant, assuring the Court there would be no allegations of wrongful conduct or personal liability. Debtors and the trustee object to the motion, arguing that both the "*Barton* doctrine" and the automatic stay bar the claim. Debtors and the trustee also argue that allowing the proceeding would be an unnecessary burden on the estate and that imposing a constructive trust would be legally and factually improper. The Court concludes that neither the *Barton* doctrine nor the automatic stay prevents Marcus from bringing his proposed *in rem* claim against the trustee in this court. The Court also concludes that the other objections go to the merits of the proposed claim and should be considered after the pleadings have been joined. Thus, the Court will grant Marcus's motion.

I. FACTS

For the limited purpose of ruling on the motion, the Court finds the following facts from the dockets in this case and a related chapter 11 case.[1]

---

[1] The Court took judicial notice of the docket in this case and the *In re Las Uvas Valley Dairies* case, no. 17-12356. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

Debtors were dairy farmers. For many years they owned and operated a large dairy in New Mexico's Hatch Valley. The dairy land, buildings, cattle, and equipment were owned by a New Mexico general partnership, Las Uvas Valley Dairies ("Las Uvas"). Before 2008 Debtors each owned 50% of Las Uvas. Thereafter, their children owned between 20 and 30% of the general partnership, while Debtors owned the balance equally.

Between 2008 and 2015 Debtors built an expensive house on 584.4 acres of land near the dairy. Marcus alleges that the costs of designing, building, and furnishing the house were paid for either directly by Las Uvas or from Las Uvas partnership draws. Marcus alleges that Debtors caused Las Uvas to pay out as much as $24,000,000 during these years to build and furnish the house and for other personal expenses. Marcus also alleges that Las Uvas conveyed the house and land to Debtors in 2012 but continued to fund the house's construction and furnishing until its completion in 2015.

Las Uvas filed a chapter 11 case in this court on September 15, 2017. Debtors' attempts to reorganize failed and a creditor's plan of liquidation was confirmed on June 14, 2018.

The plan of liquidation provided for the creation of a post-confirmation liquidating trust, to be administered by a liquidating trustee. The liquidating trustee was given the tasks of operating the dairy until it could be sold; pursuing all preference and other claims owned by the trust estate; winding up the affairs of the estate; and distributing the net proceeds to the trust beneficiaries (*i.e.* Las Uvas' secured, priority, and unsecured creditors). Philip Mitchell was the original liquidating trustee. Marcus succeeded Mitchell in July 2018.

On May 19, 2019, Debtors filed this chapter 7 case. The U.S. Trustee's office appointed Clarke Coll as the case trustee.

Marcus, on behalf of the liquidating trust, filed a claim in this case for $12,747,462. Total filed claims exceed $27,600,000. Debtors' largest scheduled asset is their house and garage on the 584.4 acres, which they scheduled at $6,900,000. In comparison, Debtors scheduled all of their other assets at a combined value of $435,000.

Marcus alleges that Debtors drove Las Uvas into bankruptcy by taking exorbitant distributions in violation of their fiduciary duties to the partnership. He contends that the distributions were used in large part to build and furnish the house. According to Marcus, had most of the $24,000,000 been used to operate the dairy, Las Uvas would still be a going concern instead of an insolvent, liquidating shell.

Based on the allegations, Marcus wishes to file a complaint against Debtors and the chapter 7 trustee seeking to impose a constructive trust, for the benefit of the liquidating trust beneficiaries, on Debtors' house, furnishings, and land.

The Debtors and the trustee oppose Marcus's motion. They argue that the *Barton* doctrine and the automatic stay prevent Marcus from suing the chapter 7 trustee; that there is no cause to modify the automatic stay; that there are no grounds to impose a constructive trust; and/or that the proposed constructive trust subverts the Bankruptcy Code's distribution scheme.

## II.   DISCUSSION

A.   The *Barton* Doctrine.

1.   In general. In *Barton v. Barbour*, 104 U.S. 126 (1881), the plaintiff, who had been injured in a train accident, sued the receiver of the railroad company for damages arising from the railroad's alleged negligence. *Id.* at 126-27. The receiver had been appointed by a Virginia court but, without seeking leave from that court, the plaintiff filed a lawsuit against the receiver in the

District of Columbia. *Id.* After recognizing the "general rule that before suit is brought against a receiver leave of the court by which he was appointed must be obtained," the *Barton* court held:

> when the court of one [s]tate has . . . property in its possession for administration as trust assets, and has appointed a receiver to aid it in the performance of its duty by carrying on the business to which the property is adapted, until such time as it can be sold with due regard to the rights of all persons interested therein, a court of another state has not jurisdiction, without leave of the court by which the receiver was appointed, to entertain a suit against him for a cause of action arising in the [s]tate in which he was appointed and in which the property in his possession is situated, based on his negligence or that of his servants in the performance of their duty in respect of such property.

*Id.* This "*Barton* doctrine," i.e., that a receiver cannot be sued in another jurisdiction without leave of the appointing court, has been held to apply to lawsuits against bankruptcy trustees. *See, e.g., Lankford v. Wagner*, 853 F.3d 1119, 1122 (10th Cir. 2017) (citing *Satterfield v. Malloy*, 700 F.3d 1231 (10th Cir. 2012), the Tenth Circuit held that the *Barton* doctrine precluded a suit against a bankruptcy trustee in district court absent approval from the appointing bankruptcy court).

> The *Barton* doctrine has three main purposes:
>
> (1) to maintain the integrity of the bankruptcy court's jurisdiction; (2) to control burdensome litigation that may impede the trustee's work as an officer of the court; and (3) to allow the bankruptcy court to monitor effectively the trustee's work." *CIT Commc'ns Fin. Corp. v. Maxwell* (*In re marchFIRST, Inc.*), Case No. 01 B 24742, 2008 WL 4287634, at *2 (N.D. Ill. Sept. 12, 2008) (relying on *Linton*), *aff'd sub nom. In re marchFIRST Inc.*, 589 F.3d 901 (7th Cir. 2009).

*In re World Marketing Chicago, LLC*, 584 B.R. 737, 743 (Bankr. N.D. Ill. 2018); *see also Lankford*, 853 F.3d at 1122-23 (purposes of the doctrine are preventing trusteeship from becoming an irksome duty; ensuring that competent people are available for appointment; reducing the expenses of bankruptcy; enabling bankruptcy judges to monitor trustee work more effectively; and ensuring that other courts do not intervene in estate administration without permission).

  2. <u>Jurisdiction versus immunity</u>. There is confusion about the effect of the *Barton* doctrine. "[T]he *Barton* doctrine does not shield trustees from lawsuits." *Phoenician*

-4-
Case 19-11162-t7   Doc 68   Filed 01/09/20   Entered 01/09/20 15:41:21 Page 4 of 10

*Mediterranean Villa, LLC v. Swope (In re J&S Properties, LLC)*, 545 B.R. 91, 98 (Bankr. W.D. Pa. 2015), affirmed, 554 B.R. 747 (W.D. Pa. 2016), affirmed, 872 F.3d 138 (3d Cir. 2017). "The *Barton* doctrine is not a form of immunity . . . ." *In re World Marketing Chicago, LLC*, 584 B.R. at 745. "[I]t is critical to untangle *Barton* from the various immunity doctrines with which it can become conflated . . . the protections it offers are entirely procedural." *In re Christensen*, 598 B.R. 658, 664-65 (Bankr. D. Utah 2019).

> Simply stated, the *Barton* doctrine does not shield trustees from lawsuits. Rather, the doctrine requires the bankruptcy court to determine *where* the suit may be brought, not *whether* the trustee may be sued. *Katz v. Kucej (In re Beibel),* No. 08–3115, 2009 Bankr. LEXIS 1544, 2009 WL 1451637, at *6, n. 18 (Bankr. D. Conn. May 20, 2009) (unreported decision) ("The Barton Doctrine is jurisdictional. Quasi-judicial immunity is substantive. They are not the same thing."); *In re Cutright,* 2012 WL 1945703, *8, 2012 Bankr. LEXIS 2419, *26 (Bankr. E.D. Va. May 30, 2012) ("The Barton Doctrine pertains to 'where the Trustee may be sued (i.e., in this court only), not whether she may be sued.'" (citing *In re Beibel,* 2009 Bankr. LEXIS 1544, [2009 WL 1451637] at *6).

*J&S Properties*, 545 B.R. at 98 (emphasis in original). By precluding another court's jurisdiction over a lawsuit against a bankruptcy trustee unless the appointing court gives its prior approval, the *Barton* doctrine prevents a "plaintiff from obtaining some advantage over the other claimants upon the assets in the [trustee's] hands . . . ." *Coll v. Franco (In re Franco)*, 586 B.R. 489, 496 (Bankr. D.N.M. 2018). The doctrine thus allows the appointing bankruptcy court to "maintain control over all matters relating to the bankruptcy proceeding[.]" *In re marchFIRST, Inc.*, 2008 WL 4287634, at *2 (N.D. Ill.).

3. <u>Does Marcus need permission to sue Coll in this court</u>? The majority rule is that a plaintiff need not seek approval before suing a bankruptcy trustee in his appointing bankruptcy court. *See, e.g., LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 5 (1st Cir. 1999) (*Barton* does not apply to proceeding in the court overseeing bankruptcy estate administration); *World Marketing Chicago*, 584 B.R. at 744 ("Nothing in *Barton* . . .stands for the

-5-
Case 19-11162-t7    Doc 68    Filed 01/09/20    Entered 01/09/20 15:41:21 Page 5 of 10

proposition that a party cannot sue a trustee in the bankruptcy court itself."); *J&S Properties*, 545 B.R. at 99 (*Barton* doctrine does not apply to action filed in the appointing bankruptcy court); *CERx Pharmacy Partners, LP v. RPD Holdings, LLC (In re Provider Meds, LP)*, 514 B.R. 473, 476 (Bankr. N.D. Tex. 2014) (a party does not need leave to sue a trustee in the appointing court); *In re Kashani*, 190 B.R. 875, 888-89 (9th Cir. BAP 1995) (leave of the bankruptcy court is not necessary for the Debtors to sue the trustee in the bankruptcy court appointing the trustee); *Golladay v. Brady (In re Coburn)*, 2006 WL 2010852, at *2 (Bankr. N.D. Cal.) (following *Kashani*); *S.E.C. v. Nutmeg Group*, 2012 WL 3307406, at *2 (N.D. Ill.) (*Barton* doctrine does not bar plaintiff's complaint because they intend to filed it in the appointing court).

One case from this district holds that bankruptcy court permission is required before bringing an action against a bankruptcy trustee in his appointing court. *Wagner v. Lankford (In re Vaughan Co. Realtors)*, 2014 WL 585288, at *1 (Bankr. D.N.M.); *see also Satterfield v. Malloy*, 700 F.3d at 1234-35 (before suing a bankruptcy trustee in the United States District Court for the Northern District of Oklahoma, plaintiff was required to obtain permission from the bankruptcy court of that district); *Lankford v. Wagner*, 853 F.3d at 1122 (to the same effect).

B.  The *Barton* Doctrine Does Not Apply to *In Rem* Claims Such as Marcus's Proposed Constructive Trust Claim.

The *Barton* doctrine protects receivers and trustees from "irksome" litigation in foreign courts seeking to hold them personally liable for alleged wrongful conduct committed during estate administration. The doctrine clearly does *not* prohibit estate creditors from asserting rights in estate property. If it did, creditors would have to seek bankruptcy court permission to file proofs of claim, seek stay relief, ask to excuse turnover, assert setoff, etc. The Court holds that where no personal

liability of the trustee is alleged, but only an interest in an estate asset, the *Barton* doctrine does not apply.²

C.      If the *Barton* Doctrine Applies, Marcus May Assert His Proposed Claim.

Alternatively, if the *Barton* doctrine applies to purely *in rem* claims such as Marcus's proposed constructive trust claim, the Court will follow the majority rule and hold that Marcus does not need permission from this Court to bring the claim. Permission is needed to sue trustees in foreign courts (which includes the district court), but not to bring claims in the appointing bankruptcy court.

Finally, to the extent that permission is required, the Court grants it. While not in any way ruling on the merits of the claim, the Court holds that it is not frivolous. Marcus has alleged facts that would support a prima facie case.

D.      Quasi-Judicial Immunity Does Not Protect the Chapter 7 Trustee From Being Named as an *In Rem* Defendant.

Because of the confusion about the scope of the *Barton* doctrine, Debtors may have argued for the doctrine's application under the impression that it affords immunity to the trustee.³ To the extent a bankruptcy trustee's quasi-judicial immunity is implicitly raised by Debtors' objection, the Court holds that such immunity does not extend to the proposed constructive trust claim.

---

² Similarly, the *Barton* doctrine is not needed to prevent claimants from asserting rights to estate assets in foreign jurisdictions. Under 28 U.S.C. § 1334(e), the supervising bankruptcy court has exclusive jurisdiction over all estate assets. *See, e.g., The Billing Resource v. Federal Trade Commission (In re The Billing Resource)*, 2007 WL 3254835, at *22 (Bankr. N.D. Cal.) (bankruptcy courts are given exclusive *in rem* jurisdiction over estate assets).
³ *See, e.g., Villegas v. Schmidt*, 2014 WL 1356544, at *2 (S.D. Tex.) ("part of the rationale [for the *Barton* doctrine] is quasi-judicial immunity"); *see also J&S Properties*, 545 B.R. at 98-99 (discussing why the *Barton* doctrine often is conflated with quasi-judicial immunity).

Bankruptcy trustees are protected by the doctrine of limited quasi-judicial immunity. *See, e.g., Gregory v. U.S./U.S. Bankruptcy Court for Dist. of Colorado*, 942 F.2d 1498, 1500 (10th Cir. 1991) (bankruptcy trustee is entitled to quasi-judicial immunity); *Curry v. Leonard (In re Castillo)*, 297 F.3d 940, 951 (9th Cir. 2002); *Franco*, 586 B.R. at 496-97 (for all claims except those alleging breach of fiduciary duty, trustees have absolute quasi-judicial immunity from personal liability if they acted within the scope of their authority). Here, Marcus does not propose to sue the chapter 7 trustee *in personam*. As he states in his motion, he "makes no claim that Coll has acted improperly in any respect." The Court doubts that Marcus could bring his proposed constructive trust claim without naming Coll *in rem*, as Coll is the estate representative and the logical person to resist the relief Marcus seeks. However, because there is no risk Coll would be held personally liable, quasi-judicial immunity is not a consideration and therefore not an impediment to Marcus bringing the proposed claim.

E.    <u>The Automatic Stay Does Not Apply to Marcus's Proposed Adversary Proceeding</u>.

Marcus also seeks modification of § 362(a)'s "automatic stay" to allow him to file his claim. Under 11 U.S.C. § 362(a), the filing of a bankruptcy petition operates as a stay against certain actions including:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [or]
> . . .
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

Relief from the stay is governed by § 362(d), which provides in part:

> "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay--
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

11 U.S.C. § 362(d).

Although the statutory language "does not differentiate between proceedings in bankruptcy courts and proceedings in other courts," it is well established that § 362(a) "does not apply to the commencement of an adversary proceeding in the bankruptcy court where the debtor's bankruptcy case is pending." *In re Cashco, Inc.*, 599 B.R. 138, 146 (Bankr. D.N.M. 2019); *see also Prewitt v. North Coast Village, Ltd (In re North Coast Village, Ltd.)*, 135 B.R. 641, 643 (9th Cir. 1992); *Fighthouse Bluffs, Corp. v. Atreus Enterprises, Ltd. (In re Atreus Enterprises, Ltd.)*, 120 B.R. 341, 346 (Bankr. S.D.N.Y 1990); *Citicorp v. Finley (In re Wash. Mfg. Co.)*, 118 B.R. 555, 561 (Bankr. M.D. Tenn. 1990); *Lee Ludwig & Assoc. v. Seasport, Inc. (In re Amer. Sports Innovations)*, 105 B.R. 614, 617 (Bankr. W.D. Wash. 1989). "Creditors routinely commence adversary proceedings before the bankruptcy court without first obtaining relief from the automatic stay." *Cashco,* 599 B.R. at 146. Thus, § 362(a) is not a barrier to Marcus filing his proposed constructive trust claim. Conversely, the Debtors'/trustee's objection that there is no "cause" to modify the automatic stay is not relevant, as no modification is needed.

Alternatively, if the automatic stay does apply in whole or in part to Marcus's proposed claim, the Court finds that there is cause to modify the stay and allow Marcus to pursue it. Again, the Court is not ruling on the merits of the claim, only that it is just and proper for Marcus to have the opportunity to assert it.

F.   <u>The Court Should Not Consider the Merits of the Constructive Trust Claim at This Time</u>.

Debtors and the chapter 7 trustee argue at some length that imposing a constructive trust on the house and contents would be an improper subversion of the Bankruptcy Code's priority scheme, and/or unsupportable by the facts.[4] Apart from (possibly) reviewing whether the claim is frivolous, the Court concludes that these arguments should not be addressed now, but rather should be raised after the constructive trust complaint has been filed and answered. With no pleadings, there is no record upon which the Court can judge the merits of Marcus's proposed claim. Once a complaint is on file, Debtors and the chapter 7 trustee will have all the rights given them under the Federal Rules of Bankruptcy Procedure, including the right to file a motion to dismiss and/or for summary judgment.

### III. CONCLUSION

Marcus may file his proposed constructive trust claim against Coll and others in this case without running afoul of the *Barton* doctrine or the automatic stay. To the extent, if any, the Court's permission is needed, it is given. Debtors' and the trustee's arguments about the availability of a constructive trust remedy in bankruptcy, either in general or under the facts at hand, may be raised and addressed once the claim is filed. The Court will enter a separate order consistent with the foregoing.

_____
Hon. David T. Thuma
United States Bankruptcy Court

Entered: January 9, 2020
Copies to: Electronic notice recipients

---

[4] There is disagreement in the case law about the propriety of imposing constructive trusts in bankruptcy. *See, e.g., In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 305-06 (7th Cir. 2014) (discussing the circuit split on the issue).